UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
E. MICHAEL DIX,                        :
        Plaintiff,              :
                                       :
v.                                     :
                                       :
VIECORE, INC.; THOMAS J.               :
CHISOLM; VANHALEN ACQUISITION          :
GROUP; THOMA CRESSEY FUND VI,          :
L.P.; THOMA CRESSEY FRIENDS            :
FUND VI, L.P.; THOMAS CABRAL;          :    Civil No: _____
JOSEPH BONOCORE MCM REALTY             :
TRUST; JOSEPH BONOCORE MCM             :
REALTY TRUST; R. FRANK JERD            :
AND LINDA I. JERD, TRUSTEES            :
FOR THE R. FRANK JERD LIVING           :
TRUST; MORGAN STANLEY DW, INC.:
FBO FRANK JERD/IRA; TED                :
SEYMOUR; GARY FRINGS; KAMI             :
STERLING;  R. FRANK JERD;              :    COMPLAINT AND
JOSEPH BONOCORE; THOMAS F.             :    DEMAND FOR JURY TRIAL
BROWN, IV; MICHELLE L.                 :
GIAMBALVO; MICHAEL SPLAVER;            :
JOHN A. CHAMBERLAIN; and               :
NUANCE COMMUNICATIONS, INC.            :
(A Necessary Party)                    :
                                       :
        Defendants.             :
_____

Plaintiff, E. Michael Dix, by way of complaint against

Defendants says:

PARTIES

1.  Plaintiff, E. Michael Dix ("Dix"), is an unsophisticated

investor residing at 5 Brookview Road, Whitehouse Station, NJ

08889 who purchased common stock; was approached to purchase more common stock in the defendant corporation Viecore, and after such purchases the price of such stock was manipulated by the defendants and then converted by them in such a way as to injure the plaintiff and financially benefit themselves.

2.    Defendant, Viecore, Inc. (Viecore) located at 1111 Macarthur Blvd., Ste. 100, Mahwah, NJ 07430-2038, is a publically traded company in the State of New Jersey and subject to a registration statement with the Securities and Exchange Commission pursuant to a merger, sale or purchase with Nuance Communications, Inc. (Nuance), a publically traded corporation registered with the Securities and Exchange Commission and listed on Stock Exchanges.

3.    Defendant, Vanhalen Acquisition Group, is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

4.    Defendant, Thoma Cressey Fund VI, L.P., is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

5.    Defendant, Thoma Cressey Friends Fund VI, L.P., is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

6.    Defendant, Thomas Cabral, is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

7.    Defendant, Joseph Bonocore MCM Realty Trust, is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

8.    Defendant, R. Frank Jerd and Linda I. Jerd, Trustees for the R. Frank Jerd Living Trust, is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

9.    Defendant, Morgan Stanley DW, Inc. FBO Frank Jerd/IRA, is an accredited majority shareholder in Viecore who was also an

owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

10. Defendant, Ted Seymour, is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

11. Defendant, Gary Frings, is an accredited majority shareholder in Viecore who was also an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

12. Defendant, Thomas J. Chisolm, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

13. Defendant, Thomas F. Brown, IV, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

14. Defendant, Joseph Bonocore, is an individual who was majority shareholder in Viecore, an officer and/or Director of

Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

15. Defendant, R. Frank Jerd, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

16. Defendant, Kami Sterling, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

17. Defendant, Michelle L. Giambalvo, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

18. Defendant, Michael Splaver, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

19.   Defendant, John A. Chamberlain, is an individual who was majority shareholder in Viecore, an officer and/or Director of Viecore, was an owner of the preferred stock of Viecore and acted in his own best interests to the detriment of the minority shareholders like the plaintiff herein.

20.   Defendant Nuance is a necessary party herein because pursuant to the terms of the merger, sale or purchase of Viecore by Nuance, Nuance is holding money and assets to be distributed to the other defendants in the future; and Nuance is a publically traded company registered with the Securities and Exchange Commission and listed on Stock Exchanges for public trade, who merged with or purchased Viecore, pursuant to a proposal filed prior to the merger/sale and filing after the merger/sale as registered with the Securities and Exchange Commission.

STATEMENT OF CLAIM

This claim seeks to recover invested value of over $162,000.00, lost profits and gains in excess of $1,000,000.00 and multiple or punitive damages sustained by plaintiff as a proximate result of respondents' misrepresentation, material omissions and self interested actions involving the manipulation of price and

sale of publicly traded corporate stock, which benefitted the defendants to approximately $ 117,000,000.00 to the detriment of the plaintiff and other investors like the plaintiff.  In addition to other counts, Claimants assert claims under Subsection 12(2) of the Securities Act of 1993, 15 U.S.C. Subsection 77l(2); Subsection 10(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. Subsection 240.10b-5.  Claimant alleges violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq. Claimant also alleges violation of state security claims, N.J.S.A. 49:3-47, et seq. (Blue Sky) and common law and statutory counts related to theft and conversion.

## JURISDICTION

21.  This Court has jurisdiction pursuant to section 22 of the Securities Act, 15 U.S.C. § 77v; section 27 of the Securities Exchange Act, 15 U.S.C. § 78aa;

22.  The District Court has jurisdiction to hear this case a pursuant to 28 U.S.C. §§ 1331, as it is a civil action arising under the laws of the United States.

23.  This Court also has jurisdiction over the claims arising under state law under 28 U.S.C. § 1367.

24.  This Court also has jurisdiction over the violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"),

18 U.S.C. § 1961, et seq., because the defendant utilized interstate commerce, the mail, wire or telephones to conduct the activities aggrieved by the plaintiff as set forth under 18 U.S.C. § 1965.

## VENUE

25. Venue is appropriate in the District of New Jersey under 28 U.S.C. § 1391 because the acts and transactions complained of occurred in substantial part in the District of New Jersey, including:

> (A) The Plaintiff was employed by defendant in a location in the State of New Jersey.

> (B) The defendants engaged extensive actively in promoting the scheme for investment;

> (C) The situs of investment complained about herein is located in this District; and

> (D) The plaintiffs are residents of this district.

## CAUSE OF ACTION

26. On or about July 1, 2002, Dix was hired as an employee Viecore, Inc. (Viecore). Dix had been an employee of Eclipse Networks, Inc., and the two companies had previously merged.

Dix was one of the employees retained by the new entity which was still controlled by the management of Viecore.

27. Dix was a shareholder in Eclipse, but as a result of the merger, the common shares of stock owned by Dix were declared worthless and he received no consideration upon the merger.

28. While the Common Shares of stock in Eclipse were declared worthless, the Preferred shares of stock in Eclipse, did retain a value and the Preferred shareholders became shareholders in Viecore and received monetary gain. The principal owner of Eclipse became a principal stockholder and a member of the Board of Directors of Viecore.

29. Dix continued to work for Viecore for 4 years until he left his job on or about August 11, 2006. Dix's job position started as Senior Account Manager, however by the time he left their employ, he had advanced to Technical Manager.

30. During my years of work at Viecore and as part of his employment contract, Dix was given bonuses of Option to purchase Common Shares of Viecore Stock. There was a formal Stock Option Agreement presented to Dix. During the course of his employment, Dix exercised his Options to purchase the Common Shares of Viecore stock.

31. On December 30, 2002, Dix was given, as part of his incentive Stock Option Agreement, an Option to purchase Twenty Thousand

(20,000) Shares of common stock of Voice Integrators, Inc. (VII).  Upon information and belief, VII was a name formerly used by Viecore, but it was the same company or substantially related to Viecore.

32. On March 1, 2006, Dix was given as part of his incentive Stock Option Agreement, an Option to purchase Four Thousand (4,000) Shares of common stock of Voice Integrators, Inc. (VII)

33. When Dix left the employment of Viecore in August of 2006, he was informed that the Options granted to him on March 1, 2006 had not vested and he could not exercise them.  Dix was still able to exercise the Options granted to him on December 30, 2002.

34. During his employment, Dix would attend management meetings with the staff, officers and even owners.  During the course of those management meeting, the staff, including Dix,  would talk with the CEO and President of Viecore, Thomas J. Chisholm ("Chisholm").   Chisholm would generally address the staff during the Quarterly Management Team Meetings.  Chisholm would generally meet with and speak with the staff, including Dix, individually after the meetings at a reception.

35. Each time Chisholm would address the employees, he would give estimated valuations of the values of the shares of the Common Stock.  Dix was repeatedly informed by Chisholm  during  these

meetings that the Common Stock was valued at approximately Eight Dollars ($8.00) per Share.

36. Based upon the representations made to Dix about the value of the shares of Common Stock, when Dix terminated his employment with Viecore, he exercised his Options and purchased Common Stock of Viecore.

37. On August 18, 2006, Dix submitted the paperwork to exercise Seventeen Thousand Five Hundred (17,500) options granted to him on December 30, 2002. The paperwork was accepted and he was given instructions on how to pay for the stock.

38. On or about September 12, 2006, Dix gave Viecore a check in the amount of Thirty Five Thousand Dollars ($35,000.00) to purchase the shares of Viecore Common Stock and he was given Stock Certificate Number 64 for the ownership of Seventeen Thousand Five Hundred (17,500) Shares of Common Stock in Viecore.

39. The shares of Viecore Common Stock delivered to Dix by Certificate Number 64 were **not registered** with the Securities and Exchange Commission (SEC) and could not be publically traded. On November 30, 2006, Dix was delivered the fully executed stockholders agreement which purported to set forth his rights and duties for these unregistered shares of common stock.

40.  While Dix was working for his new employer, Dix was invited to attend a Nuance Communications, Inc. (Nuance) Conference on speech recognition software on October 29, 2007.  This was an industry conference and Dix had a working relationship with Nuance.

41.  In the opening remarks of the Nuance conference, the CEO of Nuance announced that Nuance had just entered into an agreement to acquire Viecore.  The CEO and President of Viecore, Thomas J. Chisholm also attended the conference and stood up to acknowledge the announcement.  In the merger, the owners of Viecore would receive One Hundred Twelve Million Dollars ($112,000,000.00)

42.  After the announcement, Dix received a notice of shareholder meeting dated October 29, 2007.  This notice was for a special meeting to approve the merger between Viecore and Nuance.  However, in addition to agreeing to sell the corporation, the Board of Directors was seeking to amend the corporate bye-laws and amend the corporate charter to re-allocate the division of corporate ownership towards themselves.

43.  The Officers and Board in their special meeting not only sought to re-allocated the ownership of the corporation towards themselves, there was also a plan to enter into a Golden Parachute plan to again siphon approximately Six

Million Nine Hundred Thousand Dollars ($6,900,000.00) toward the Officers and Board.

44. Prior to the meeting, Dix contacted his attorney, who sent a letter requesting documentation to support valuations, allocations of ownership percentages or any other means of substantiating the actions being voted upon at the special shareholders meeting.

45. On November 20, 2007, Dix attended the shareholders meeting and voiced opposition to the proposed merger based upon the re-allocation of the corporate ownership and voted against the proposed resolutions. Dix had not received an answers to the request for information. However, approximately Four (4) months later Dix did received a one page copy of a balance sheet which had obviously been pulled from an accountant's report. Dix did not receive the accountant's report, only that one page. There were also some other extraneous pages added which were not designed to inform Dix of the value of the shares of my stock.

46. As part of this merger plan, Dix was to receive an unrealistically low value for the shares of unregistered stock he purchased. In fact, Dix was going to receive substantially less than the amount he paid to purchase the common shares of stock.

47. Dix was told that in order to receive this money, he had to sign an agreement that contained a release of liability to the Board of Directors, Officers and would forever waive his rights as a minority shareholder.  To date, Dix has not received the proceeds of the sale of his stock shares.

48. Not only has Dix's stock investments been artificially devalued by the self-interested acts of the defendants, the assets themselves have been seized by the very same defendants who have been entrusted by all of the shareholders to safeguard such shares.

49. The defendant majority shareholders, the Officers and Directors of Viecore have conspired in concert to take the investments of the minority shareholders and convert same to themselves.

50. The defendants crossed state lines and utilized interstate commerce, the united states postal service and the telephone to perpetrate these actions.

51. Nuance, the corporation purchasing Viecore has an extended payout plan to the other defendants and is holding substantial sums for distribution to the other defendants, making them a necessary party to this action.

52. This suit is being prosecuted to remedy these takings by the majority shareholders.

COUNT I

(Section 12(2) of the securities Act of 1933)

53.  The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

54.  Defendants offered to sell and sold Dix securities by the use and means of instrumentalities of communication and interstate commerce and of the mails.

55.  Defendants made the sale of the securities herein described by means of oral communications, which included untrue statements of material falsity and which omitted to state material fact; necessary in order to make the statements not misleading, in light of the circumstances under which they were made.

56.  As a direct and proximate result of Defendants' violations as described, Dix sustained damages in excess of $162,000.00.

COUNT II
(Section 10b of the Securities Exchange
Act of 1934 and Rule 10b-5 Thereunder)

57.  The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

58.   The representations made by Defendants including Chisholm, as
      well as the omissions and trading activities described above,
      constituted a scheme to defraud Dix in connection with the
      purchase and sale of securities in violation of §10b of the
      Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and Rule
      10b-5 promulgated, 17 C.F.R. §;240.10b-5.

59.   As a direct and proximate result of the defendants including
      Chisholm's omissions and material misrepresentations, Dix
      sustained damages in excess of $162,000.00.


                        COUNT III
                 (Breach of Fiduciary Duty)

60.   The allegations of each of the paragraphs of this Complaint,
      above and below, are repeated and realleged as if fully set
      forth herein.

61.   The defendant Officers and Board of Directors, as the
      representative of Dix in the corporate operations of Viecore,
      owed him a fiduciary duty to supervise and handle his
      investment in common stock with utmost care, to keep Dix fully
      advised as to the activities of the corporation and the
      conditions of his respective ownership shares and percentage,
      and to refrain from misleading Dix or from acting in their own
      self-interest at the expense of Dix.

62. The plaintiff has made diligent inquiry to the defendants, including the Board of Directors, the corporate attorney and the corporate accountants, without resolve.

63. The individual defendants have failed to keep the plaintiff informed of corporate events, failed to advise the plaintiff of annual stockholder meetings, has failed to allow the plaintiff to vote his shares in appointing the Board of Directors and have overall failed in their duties toward the plaintiff.

64. By their acts and conduct as described above, the defendant Officers and Directors of Viecore breached their fiduciary duties each owed to Dix.

65. As a direct and proximate result of the defendant Officers and Directors of Viecore's breach of their fiduciary duties, Dix sustained damages in excess of $162,000.00.

COUNT IV
(Common Law Fraud)

66. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

67. The false misrepresentations, material omissions and actions taken by the defendant Officers and Directors of Viecore,

including Chisholm as described above, including their failure to disclose and materially misrepresenting that they would and did unilaterally change the value of the common stock by corporate resolution to the detriment of Dix's ownership shares and to their own benefit, constituted common law fraud.

68.  The Defendants made a material misrepresentation of a presently existing or past fact; they had knowledge or belief of its falsity; there was an intention that the plaintiff and other like the plaintiff rely on it; there was in fact reasonable reliance thereon; and the Plaintiff suffered damages.

69.  As a direct and proximate result of the defendant Officers and Directors of Viecore common law fraud, Dix sustained damages in excess of $162,000.00.


COUNT V
(Negligence)

70.  The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

71.  As the Officers and Board of Directors, the defendants owed Dix a duty to handle oversee and protect Dix's shares of stock and ownership percentage with reasonable care and prudence and

to refrain from acting in a negligent fashion with respect to Dix and his investment.

72. By reason of the acts and conduct described above, the defendant Officers and Directors of Viecore, at all times material to this action, failed to exercise such reasonable care, and breached their duty to Dix.

73. As a direct and proximate result of the defendant Officers and Directors of Viecore's negligence, Dix sustained damages in excess of $162,000.00.

COUNT VI
(Breach of Contract)

74. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

75. The defendant Officers and Directors of Viecore's activities described above constitute a breach of contract by the defendant Officers and Directors of Viecore.

76. As a direct and proximate result of the defendant Officers and Directors of Viecore's breach of contract, Dix sustained damages in excess of $162,000.00.

COUNT VII
(Conversion)

77. The allegations of each of the paragraphs of this Complaint,

above and below,  are repeated and realleged as if fully set forth herein.

78. The defendant Officers and Directors of Viecore converted to their own use personal property owned by Dix; i.e., the consideration Dix paid for the worthless common stock investments.  The proceeds of the sale of such worthless common stock investments to Dix, benefitted the defendants.

79. Dix objected to the actions of the majority shareholders, defendant Officers and Directors of Viecore and refused to allow them to vote, changing the ownership valuation of the shares of stock, rendering Dix's shares of common stock worthless.

80. The Defendants did in fact take the common shares of the Plaintiff and cancelled them of record without making payment and retaining any and all payments.

81. The Plaintiff had legal ownership or an immediate superior right of possession to specific identifiable shares of Common Stock, and the Defendants exercised unauthorized dominion over the property to the exclusion of plaintiff's rights.

82. The activities by the defendant majority shareholders, defendant Officers and defendant Directors of Viecore as alleged above constitute conversion.

83. As a direct and proximate result of defendants' conversion,

Dix sustained damages in excess of the fair value of the converted securities on the date of conversion, lost profits from the corporation which were never distributed, and interest from the date of accrual.

COUNT VIII
(Respondeat Superior)

84. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

85. At all times relevant hereto, the majority shareholders, defendant Officers and Directors of Viecore were acting in the interests of Viecore as employees, Directors or Owners of Viecore and Viecore had a duty to supervise the individual defendants.

86. Nuance was a registered and publically traded corporation and they had the due diligence responsibility to investigate the activities of defendant, Viecore; and as the successor in interest to Viecore, are liable to Dix for the injuries he suffered as a result of the activities of the majority shareholders, defendant Officers and Directors of Viecore.

Count IX
Racketeer Influenced and Corrupt Organizations Act
("RICO")
18 U.S.C. §§ 1961-1968

87.  The allegations of each of the paragraphs of this Complaint, above and below,  are repeated and realleged as if fully set forth herein.

88.  The described activities, actions and omissions of the defendant majority shareholders, defendant Officers and Directors of Viecore; constitute a violation of N.J.S.A. 49:3-47, et seq.

89.  The acts of the above described individual defendants, constitute an organized and continuing scheme to oppress the minority shareholders, prevent them from receiving the benefits of owning common stock, and/or receiving the rights stemming from their stock ownership in the corporation (Viecore), while converting the rights and benefits of the Plaintiff's stock ownership to themselves.

90.  As a direct result of the actions of the majority shareholders, defendant Officers and Directors of Viecore; the Dix's sustained damages in excess of $162,000.00.

COUNT X
(N.J.S.A. 49:3-47, et seq.
Uniform Securities Law (1967)
and Uniform Securities Law (1997))

91.   The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

92.   The described activities, actions and omissions of the defendant majority shareholders, defendant Officers and Directors of Viecore; constitute a violation of N.J.S.A. 49:3-47, et seq.

93.   As a direct result of the actions of the majority shareholders, defendant Officers and Directors of Viecore; the Dix's sustained damages in excess of $162,000.00.

COUNT XI
(Minority Shareholder Oppression)

94.   The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

95.   The actions of the defendants were to the detriment of the plaintiff by stripping away the Plaintiff's shareholder rights and benefits in his ownership of the Common stock of Viecore, Inc.

96.  The majority owners of the Common Stock in Viecore, Inc.,
     colluded and acted to the detriment of the minority
     shareholders like the plaintiff, by voting in such a way as
     to benefit themselves and excluding the minority
     shareholders from the same benefits.

97.  The acts of the defendants were willful and deliberate in
     excluding the plaintiff, a minority shareholder, from
     receiving any benefit from his ownership in the Common Stock
     of Viecore, Inc.

98.  The plaintiff has been harmed by the actions of the
     defendants in his failure to receive distribution of
     profits, failure to receive the correct amount of
     compensation upon the sale of the corporation, being
     required to sign away his minority shareholder rights to
     receive a reduced distributive share of the value of the
     corporation upon sale of same, failure to be allowed to
     exercise the rights of Common Stock ownership in the
     Corporation as well as other oppressive actions.


                              Count XII
                       (Accounting of Proceeds)

99.  The allegations of each of the paragraphs of this Complaint,

above and below, are repeated and realleged as if fully set forth herein.

100. The plaintiff minority percentage ownership of several entities in which the defendant shareholders own a majority percentage.

101. The plaintiff has not received the benefits of ownership since his ownership rights have been subject to oppression by the collusion of the majority shareholders.

102. The plaintiff has not been adequately informed of periodic stockholder meetings, vote his stock shares at all meetings, elect board of director members, hold a corporate position, receive dividends or distributions or in any other way benefit as a shareholder.

103. The majority shareholders participate as Directors and Officers of the corporation, receive salaries, benefits, bonuses, expense accounts, profit sharing plans, golden parachutes and otherwise distribute all profits of the corporations to themselves.

104. The above stated minority shareholder oppression has deprived the plaintiff of his rightful share of the profits in the corporations by diverting all profits to the other defendants.

105. The plaintiff demands an accounting of the disbursements of the profits of the corporation which includes officers and directors salaries, expenses, benefits and any other type of remuneration.

Count XIII
(Constructive Trust)

106. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

107. The plaintiff has been directly injured by the defendants' when they have intentionally prevented the plaintiff from receiving any benefits from the ownership of his minority interest in shares of stock.

108. Upon information and belief, the defendants have repeatedly calculated all profits of the corporations and divided same between themselves as bonuses, salaries and benefits; instead of sharing the profits with all shareholders.

109. Upon information and belief, the defendants have formed new companies or new classes of stock shares, from assets of the original corporations, which exclude the minority shareholders like the plaintiff.

110. The profits of the corporations are now flowing through these new companies, sidestepping any reporting and distribution requirements to the minority shareholder.

111. The defendants are wrongfully reaping monetary gains at the expense of the plaintiff from their intentional oppression of the minority shareholder.

112. The defendants must be estopped from reaping these wrongful gains and the monetary gains must instead be returned to the injured parties with interest and all income derived therefrom.

113. The Defendants then conspired to sell the corporation (Viecore) and structure the sale in such a way as to deprive the minority Common Shareholders, like the Plainitff, from realizing their rightful share of income from such sale.

114. The Plaintiff seeks that this Court enter judgment in his favor and against the defendants, granting equitable relief and imposing a constructive trust upon the proceeds of the sale to maintain the *status quo*, until the accurate distribution between the shareholders can be reasonably ascertained and the trust proceeds distributed accordingly.

115. A constructive trust must be put in place around the gains wrongfully realized by the defendants, such trust being for the benefit of the plaintiff.

116. The trust will consist of all profits, earnings, interest, gains, or other realized or unrealized benefits reaped by the defendants at the expense of the plaintiff or compounded from the benefits made thereon from the plaintiff.

Count XIV
(Fraud by Inducement)

117. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

118. The original corporate charter of the defendant corporation states that the shareholders will share in the profits and losses of the corporations.

119. The plaintiff is a minority shareholder in the defendant corporations, and the majority shareholders have all participated in the distribution of the profits of the corporations, to the exclusion of the minority shareholder plaintiff.

120. The defendant shareholders have had no intention of allowing the plaintiff to participate in sharing the revenues of the corporations, since he first became a shareholder.

121. In reliance upon the corporate charters and the duties of the defendants to the shareholders as board members and officers, the plaintiff was induced into entering the business venture with the defendants.

122. The defendants have always intended to take advantage of the plaintiff by taking consideration from the plaintiff for the shares of stock purchased and never allowing the

plaintiff to participate, vote the shares, share in any profits from the corporations or an any way benefit from his stock ownership.

123. Instead of the defendants' devoting their best efforts to operate the business for the benefit of the stockholders, the defendants have operated the businesses to best benefit themselves.

124. The defendants have willfully, wantonly and or recklessly acted to the detriment of the businesses, and the minority shareholders, including the plaintiff.

125. Due to the actions and or inactions on the defendants, the plaintiffs have been financially injured and have suffered the loss of money, benefits, and business reputation.


Count XV
(Breach of Contract)

126. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

127. The defendants entered into agreements to sell or convey stock to the Plaintiff for actual consideration.

128. As an owner of common stock shares, the plaintiff is

entitled to the benefits of all businesses and the benefits of all business contracts in his proportionate share.

129. The defendants have breached the contracts by refusing to distribute the profits of the businesses with the plaintiff pursuant to the contracts.

130. The defendants have breached the contracts by refusing to distribute the correct share of sales proceeds of the corporation with the plaintiff.

131. The plaintiff has suffered damages as a result of said breaches identified herein.

Count XVI
(Consumer Fraud Act)

132. The allegations of each of the paragraphs of this Complaint, above and below, are repeated and realleged as if fully set forth herein.

133. The plaintiff is a consumer in the State of New Jersey.

134. The Defendants made statements to the Plaintiff in order to get the plaintiff to buy a product and such statements were false, and the defendants had actual knowledge of the falsity of such statements or made them with such reckless abandon that the act arises to scientor.

135. The Plaintiff relied upon such statements in deciding to

purchase the product.

136. After purchasing the product, the plaintiff was injured when the defendants intentionally devalued the product and shifted such value to themselves.

137. The defendants have willfully, wantonly and or recklessly acted to the detriment of the businesses, and the minority shareholders, including the plaintiff.

138. Due to the actions and or inactions on the defendants, the plaintiffs have been financially injured and have suffered the loss of money, benefits, and business reputation.

139. Pursuant to the New Jersey Consumer Fraud act, the plaintiff seeks to recover the amount of his original payment and statutory multiple damages.

Count XVII
(Unjust Enrichment)

140. The allegations of each of the paragraphs of this Complaint, above and below,  are repeated and realleged as if fully set forth herein.

141. The actions of the Defendants in artificially deflating the value of the plaintiff's common stock prior to winding up and distributing the value, and creating a new class of stock only owned by the Defendants and placing all value in

that new class of stock created unjust enrichment to the Defendants at the expense of the plaintiff.

142. The actions of the Defendants in paying all profits of the corporation to themselves through salaries, bonuses, profit sharing and exclusive dividends to the class of stock only owned by themselves, created unjust enrichment to the Defendants at the expense of the plaintiff.

143. The defendants were enriched, the enrichment was at plaintiff's expense and the circumstances were such that equity and good conscience require defendant to make restitution.

144. The plaintiff seeks restitution in the amount of lost profits and lost value in the shares of Common Stock owned by him, with such lost amounts being retained by the Defendants.

<u>DEMAND</u>

WHEREFORE, plaintiff, E. Michael Dix, respectfully requests this Court to grant the following relief:

1.   Requiring defendants to compensate plaintiff for all damages sustained as a result of defendants' unlawful activities described above, with prejudgment interest

accrued and accruing thereon according to law;

2.  That a Constructive Trust be placed around the assets
    for a determination of an accurate distribution to the
    shareholders of the Corporation, specifically a
    determination of the amounts due and owing the
    Plaintiff, with the proceeds to be distributed and/or
    released by further Order of this Court.

3.  Vacating any and all Golden Parachute Plans which were
    passed by the majority Common Stock stockholders to the
    detriment of the minority Common Stock shareholders,
    like Plaintiff.

4.  The return of all assets taken by the Defendants and
    wrongfully enriching them at the expense of the
    Plaintiff.

5.  An award of damages for the profits of the corporations
    which have not been distributed to the plaintiff,

6.  An award of penalties, amounts, fines, interest and/or
    other amounts specifically set forth by statute,
    regulation, law, directive, rule or as required by
    administrative directive and/or legislative intent.

7.  An award of actual, incidental and consequential
    damages as a result of the defendants' breach(es),

8.  Business interest accumulated on the contribution which

was not made by the defendant.

9.  Directing defendant to pay claimant's costs and
    reasonable attorneys' fees herein;

10. Directing the defendants to pay the Plaintiff punitive
    damages and/or statutory damage multiples for their
    actions.

11. Granting claimant such other and further relief as is
    just and proper.

12. An award for expert witness fees; and

13. Such other relief as this Court deems just and
    equitable.


### JURY DEMAND

Plaintiffs demand a trial by jury on all issues.



Dated: November 18, 2008

                    _____/s/_____
                    JOHN J. HOPKINS, III, ESQ. (JH9494)
                    545 Bath Avenue, Suite 201
                    P.O. Box 4106
                    Long Branch, New Jersey  07740
                    732-263-1414
                    732-263-1042 fax
                    Attorneys for Plaintiff
                    E. Michael Dix